IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ELAINE B. GOLDENSTEIN and LEONARD R. GOLDENSTEIN | ) | |
| | ) | CASE NO. 4:08-CV-3163 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' NOTICE OF REMOVAL** |
| | ) | |
| DAVOL INC. and C. R. BARD, INC., | ) | |
| | ) | |
| Defendants. | | |

Defendants Davol Inc. and C.R. Bard, Inc. ("Defendants"), with full reservation of all defenses, objections, and exceptions, including but not limited to service, venue, and statute of limitations, removes the above-captioned action from the District Court of Adams County, Nebraska, to the United States District Court for the District of Nebraska, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. As support, Defendant states the following:

**I.**

**INTRODUCTION**

1. Plaintiff alleges that the Composix® Kugel® Hernia Patch, an FDA-approved medical device manufactured and sold by Davol Inc. for use in the repair of soft tissue defects, including hernias, was defective. (*See* Complaint, ¶¶ 4, 7). In 2006, two federal court plaintiffs with similar claims filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") seeking transfer and centralization of all federal cases involving this medical device pursuant to 28 U.S.C. § 1407. On May 31, 2007, the JPML heard that motion, and on June 22, 2007, the JPML granted the plaintiffs' motion for transfer and consolidation. *See In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371 (J.P.M.L. 2007). As a result, all federal cases concerning the Composix® Kugel® Patch have been transferred to the District of Rhode Island for consolidated pretrial proceedings styled

as *In re: Kugel Mesh Hernia Patch Prods. Liab. Litig.*, No. 1:07-MDL-1842-ML (D.R.I.) (J. Lisi). With Defendant's removal, the present action can and should become part of those MDL proceedings in due course.

**II.**

**THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

1. Plaintiff filed a lawsuit against Defendants in the District Court of Adams County, Nebraska, on or about June 30, 2008. Davol Inc. was served via certified mail on July 2, 2008. C.R. Bard was served via certified mail on July 2, 2008. Neither Defendant has answered Plaintiff's Complaint in Adams County.

2. As required by 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Ex. A.

3. This Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the District Court of Adams County, Nebraska, where Plaintiff's Complaint is pending. *See* 28 U.S.C. § 89(b).

4. This Notice of Removal is timely under 28 U.S.C. § 1446(b). It has been filed within 30 days of the first date on which Defendant received a copy of the Plaintiff's Complaint through service.

5. In accordance with 28 U.S.C. § 1446(d), Defendant is filing a written notice of this removal with the Clerk of Adams County, Nebraska, where Plaintiff's Complaint is pending. A copy of this of Notice of Removal and the written notice of same are also being served upon Plaintiff's counsel.

**III.**

**THIS COURT HAS DIVERSITY JURISDICTION**

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, and there is complete diversity of citizenship between Plaintiffs and Defendants. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

**A.**

**The Parties are Completely Diverse**

7. Plaintiffs are residents of the County of Adams, Nebraska. *See* Complaint ¶ 1.

8. Defendant Davol Inc. is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. Accordingly, Davol Inc. is a citizen of those two states, and not Nebraska. *See* 28 U.S.C. § 1332(c)(1).

9. Defendant C.R. Bard, Inc. is, and has been at all relevant times, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey. Accordingly, C.R. Bard is a citizen of New Jersey, and not Nebraska. *See* 28 U.S.C. § 1332(c)(1).

**B.**

**The Amount in Controversy Requirement is Satisfied**

10. The amount in controversy has been met.

11. It is clear from the quality of plaintiff's allegation that more than $75,000 is in controversy and therefore the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met. Plaintiffs' claims sound in product liability and seek recovery for personal injuries

allegedly caused by a defective medical device, the Composix® Kugel® hernia repair patch, that was designed and sold by Davol Inc. and used in conjunction with Plaintiffs' hernia repair. (*See* Complaint, ¶¶ 4, 9). Plaintiffs allege that due to its allegedly defective design, the Composix® Kugel® hernia patch failed, and Plaintiff Elaine Goldenstein "suffered abdominal pain for approximately 15 months" (*Id.* at ¶ 21) which required "surgical intervention" (*Id.* at ¶ 23) and post-operative complications (*Id.*). Plaintiffs allege physical pain, mental anguish, lost wages, medical expenses, and loss of consortium. (*See* Complaint, ¶¶ 26-27, 106).

12. Plaintiffs request judgment "in a sum to confer jurisdiction upon this Court together with interest" (*See* Complaint, text beginning "WHEREFORE" after ¶ 75) or judgment "for such amount that is determined to be fair and reasonable" (*See* Complaint, ¶ 20), and an award of additional damages for aggravating circumstances in such a sum which will serve to deter" Defendants, *e.g.*, punitive damages. (*See* Complaint, ¶ 75). Defendant believes in good faith, as set forth below, that more than $75,000 is actually in controversy, and therefore the amount-in-controversy of 28 U.S.C. § 1332(a) has been met.

13. The amount-in-controversy requirement is met here because the type of injuries alleged in Plaintiff's complaint makes it "facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (determining that removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement); *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)); *see also Campbell v. Bridgstone/Firestone, Inc.*, 2006 WL 707291, at *2 (E.D. Cal. Mar. 17, 2006);

*In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding that the amount in controversy to be satisfied where plaintiffs alleged economic loss, medical and health expenses, and claimed serious medical conditions); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 646 (S.D. Tex. 2005) (same); *Quinn v. Kimble*, 228 F. Supp. 2d 1038 (E.D. Mo. 2002) (same).

14. In fact, a number of other plaintiffs have brought similar product liability actions against Defendants and have pled an amount in controversy greater than $75,000. *See In re Rezulin*, 133 F. Supp. 2d at 272, 296 (looking to other cases involving the same product to resolve amount-in-controversy inquiry); *see, e.g., Lord v. Davol Inc. & C.R. Bard, Inc.*, No. 5:07-cv-360-0C-10GRJ (M.D. Fla. filed Sept. 4, 2007) (alleging damages in excess of amount required by 28 U.S.C. § 1332) (Ex. B); *Sanchez v. Davol Inc. & C.R. Bard, Inc.*, No. 1:07-cv-21928-PCH (S.D. Fla. filed July 27, 2007) (same) (Ex. C); *Montgomery v. Davol Inc. & C.R. Bard, Inc.*, No. 3:07-cv-176-RV-EMT (N.D. Fla. filed Apr. 20, 2007) (same) (Ex. D); *Staton v. Davol Inc. & C.R. Bard, Inc., et al.*, No. 2:07-cv-01033-HGD (N.D. Ala. filed Apr. 18, 2007 [excerpt]) (attaching original complaint alleging damages of $2 million) (Ex. E). Furthermore, federal courts in analogous cases have held that the amount-in-controversy threshold is met because, as here, "the complaint . . . does not preclude recovery in excess of $75,000." *In re Rezulin*, 133 F. Supp. 2d at 296.

WHEREFORE, Defendants respectfully remove this action from the District Court in and for Adams County, Nebraska, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Should any question arise as to the propriety of this removal, Defendant respectfully requests an opportunity to provide briefing and oral argument.

Date: July 31, 2008.

DAVOL INC. and C.R. Bard, Inc.,
Defendants,

By: /s/ Aaron A. Clark
Aaron A. Clark, #20045
McGrath North Mullin & Kratz, PC LLO
Suite 3700 First National Tower
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070
(402) 341-0216 fax

Of Counsel:

Kirby T. Griffis
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 fax

**CERTIFICATE OF SERVICE**

The undersigned hereby affirms that the foregoing DEFENDANTS' NOTICE OF REMOVAL was filed electronically on July 31, 2008, using the U.S. Court's CM/ECF, which caused a copy of same to be served electronically on counsel of record by email if registered, and that a true and correct copy of the foregoing was served on counsel of record not registered by first class mail, addressed as follows:

Christopher P. Welsh
Welsh & Welsh, P.C., L.L.O.
2027 Dodge Street, Suite 400
Omaha, NE 68102

/s/ Aaron A. Clark
Aaron A. Clark

# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
07/02/2008
CT Log Number 513594507

**TO:** Jean Miller, Assistant Secretary
C. R. Bard, Inc.
730 Central Avenue, 730 Central Avenue
New Providence, NJ 07974

**RE:** **Process Served in Nebraska**

**FOR:** C. R. Bard, Inc. (Domestic State: NJ)

RECEIVED
JUL 07 2008
C.R. BARD LAW DEPARTMENT

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Elaine B. Goldenstein and Leonard R. Goldenstein, Pltfs. vs. Davol, Inc. and C.R. Bard, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons and Complaint |
| **COURT/AGENCY:** | District Court of Adams County, NE<br>Case # CI 08 437 |
| **NATURE OF ACTION:** | Product Liability Litigation - The Defendant's products were defective and dangerous to the Plaintiff and the Public |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Lincoln, NE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/02/2008 postmarked on 07/01/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days of service |
| **ATTORNEY(S) / SENDER(S):** | Christopher P. Welsh<br>Welsh & Welsh, P.C., L.L.O.<br>2027 Dodge Street<br>Suite 400<br>Omaha, NE 68102<br>712-322-2002 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 798472635250<br>Email Notification, Jean Miller JEAN.MILLER@CRBARD.COM |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>301 South 13th Street<br>Suite 500<br>Lincoln, NE 68508 |
| **TELEPHONE:** | 402-437-8500 |

Page 1 of 1 / JF

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# SUMMONS

Doc. No. 15202

IN THE DISTRICT COURT OF Adams COUNTY, NEBRASKA
P.O. Box 9
Hastings NE 68902 0009

Elaine B Goldenstein v. Davol Inc

Case ID: CI 08 437

TO: C.R.Bard Inc

You have been sued by the following plaintiff(s):

Elaine B Goldenstein Leonard R Goldenstein

Plaintiff's Attorney: Christopher P Welsh
Address: 400 Scoular Building
2027 Dodge Street
Omaha, NE 68102

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties within 30 days of service of the complaint/petition and filed with the office of the clerk of the court within a reasonable time after service. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date: JUNE 30, 2008 BY THE COURT: Clerk

DISTRICT COURT Seal ADAMS COUNTY, NEBRASKA

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

C.R.Bard Inc
% CT Corporation System
301 South 13th Street Suite 500
Lincoln, NE 68508

Method of service: Certified Mail

You are directed to make such service within twenty days after date of issue, and show proof of service as provided by law.

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
07/02/2008
CT Log Number 513594467

RECEIVED
JUL 07 2008
C.R. BARD LAW DEPARTMENT

**TO:** Stephen Long, General Counsel
C. R. Bard, Inc.
730 Central Avenue
New Providence, NJ 07974

**RE:** **Process Served in Nebraska**

**FOR:** Davol Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Elaine B. Goldenstein and Leonard R. Goldenstein, Pltfs. vs. Davol, Inc. and C.R. Bard, Inc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons and Complaint |
| **COURT/AGENCY:** | District Court of Adams County, NE<br>Case # CI 08 437 |
| **NATURE OF ACTION:** | Product Liability Litigation - The Defendant's products were defective and dangerous to the Plaintiff and the Public |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Lincoln, NE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/02/2008 postmarked on 07/01/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days of service |
| **ATTORNEY(S) / SENDER(S):** | Christopher P. Welsh<br>Welsh & Welsh, P.C., L.L.O.<br>2027 Dodge Street<br>Suite 400<br>Omaha, NE 68101-0024<br>712-322-2002 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 798472629530 |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>301 South 13th Street<br>Suite 500<br>Lincoln, NE 68508 |
| **TELEPHONE:** | 402-437-8500 |

Page 1 of 1 / JF

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# SUMMONS

Doc. No. 15201

IN THE DISTRICT COURT OF Adams COUNTY, NEBRASKA
P.O. Box 9
Hastings NE 68902 0009

Elaine B Goldenstein v. Davol Inc

Case ID: CI 08 437

TO: Davol Inc

You have been sued by the following plaintiff(s):

Elaine B Goldenstein    Leonard R Goldenstein

Plaintiff's Attorney: Christopher P Welsh
Address: 400 Scoular Building
2027 Dodge Street
Omaha, NE 68102

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties within 30 days of service of the complaint/petition and filed with the office of the clerk of the court within a reasonable time after service. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date: JUNE 30, 2008    BY THE COURT:
Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

Davol Inc
% CT Corporation System
301 South 13th Street Suite 500
Lincoln, NE 68508

Method of service: Certified Mail

You are directed to make such service within twenty days after date of issue, and show proof of service as provided by law.

COPY

IN THE DISTRICT COURT OF ADAMS COUNTY, NEBRASKA

| | | |
|---|---|---|
| ELAINE B. GOLDENSTEIN and LEONARD R. GOLDENSTEIN | ) | Case No. CI 08-437 |
| Plaintiffs, | ) | |
| v. | ) | COMPLAINT |
| DAVOL, INC. and C.R. BARD, INC., | ) | |
| Defendants. | ) | |

FILED '08 JUN 30 PM 2 33 ADAMS COUNTY CLERK OF DIST. COURT

## Parties

1. Plaintiffs, Elaine Goldenstein and Leonard R. Goldenstein are citizens and residents of the County of Adams, State of Nebraska.

2. Defendant, Davol, Inc. (hereinafter referred to as Defendant "Davol") is a corporation that is incorporated under the laws of the State of Rhode Island. Davol has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. Davol focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy. Davol at all times relevant did substantial and continuous business in the State of Nebraska.

3. Defendant, C.R. Bard, Inc. (hereinafter referred to as Defendant "Bard") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporation parent/stockholder of Davol and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies Davol with material that forms part of the Kugel Patch. Bard at all times relevant did substantial and continuous business in the State of Nebraska.

**Facts**

4. Defendant Davol designed, manufactured and distributed the Compsix Kugel Patch, a hernia mesh patch that was inserted into Mrs. Goldenstein's body.

5. Defendant Davol, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Mrs. Goldenstein's body.

6. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510 k Application on the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

7. Immediately after the Kugel patches were placed on the market, Davol and Bard began receiving actual notices of memory ring failures and Kugel Patch defects. Davol and Bard actively and intentional concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Mrs. Goldenstein, Plaintiff's physicians, and the general public.

8. After the defective and dangerous Kugel Patch was already placed on the market, Defendants Davol and Bard conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 founds that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, Bard and Davol failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by Davol and Bard from Mrs. Williams, Plaintiffs's surgeons, and the public at large.

9. On or about September 12, 2005, Mrs. Goldenstein had an incisional hernia repaired by Dr. Benjamin Hung at Saint Elizabeth's Hospital in Lincoln, Nebraska. A Large Oval Composix Kugel Patch was implanted into Mrs. Goldenstein at this time.

10. The Composix Kugel Patch hernia repair product implanted in Mrs. Goldenstein was designed, manufactured, sold and distributed by Davol to be used by surgeons for hernia repair surgeries and was further represented by Davol to be an appropriate, cost-effective and suitable product for such purpose.

11. No later than September, 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, Bard and Davol found the corrective measures to be ineffective and the process still no in control. Davol and Bard were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Mrs. Goldenstein, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with the Kugel Patches using the memory recoil ring.

12. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increased in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, Davol and Bard waited until August 30, 2005, to initiate a partial Kugel Patch distribution hold. Davol and Bard actively and intentionally chose not to immediately inform Mrs. Goldenstein, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. Davol and Bard waited until December, 2005, to notify the public of the potential severity of the

complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

13. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

14. On December 22, 2005, Davol recalled many sizes of Composix Kugel Patches under a Class I recall notice.

15. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

16. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that Bard and Davol:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;
ii. misidentified numerous Kugel Patch complication events;
iii. failed to apply the product quality hold and release procedure on a timely basis;
iv. failed to properly follow procedures for conducting design validation review;
v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provide no justification for including only the Extra Large Kugel Patch sizes in the December, 2005 recall;
vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;
vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel Patch before putting them into the stream of commerce;
viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

17. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

18. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

19. Plaintiffs was never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering of Bard's and Davol's FDA recall of the product.

20. Neither Mrs. Goldenstein nor her physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Mrs. Goldenstein's injuries until some time after Bard and Davol chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

21. Mrs. Goldenstein began suffering abdominal pain approximately fifteen months after the defective Kugel Patch was implanted which continued to increase in intensity and for which she sought treatment from her physicians. Unaware of the defective nature of the Composix Kugel Patch and its memory recoil ring, Mrs. Goldenstein's physicans were unable to diagnose the cause of her suffering.

22. On or about March 27, 2007, Mrs. Goldenstein was suffering from chronic abdominal pain and swelling so severe that she was forced undergo surgery at Saint Elizabeth Hospital by Dr. Benjamin Hung to remove the defective Composix Kugel Mesh Patch.

23. Surgical intervention was required and it showed that the Kugel Patch had folded and twisted on itself and the bowel obstruction was caused by dense adhesions of the small intestines to the Kugel Patch which required "very tedious dissection" by Dr. Benjamin Hung.

Damage from the defective and now misshapen mesh resulted in the need for Mrs. Goldenstein to have a large section of her bowel resected and removed.

24. Mrs. Goldenstein required nearly three weeks of post-operative hospitalization because of the severity of the complications which were directly related to the failure of the Kugel Composix patch and its memory recoil ring.

25. Mrs. Goldenstein was finally discharge from the hospital on March 30, 2007.

26. Mrs. Goldenstein has suffered and will continue to suffer physical pain and mental anguish.

27. Plaintiffs has incurred substantial medical bills and Mrs. Goldentstein has lost wages.

28. Davol and Bard withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

29. Upon information and belief Davol and Bard failed to comply with the FDA application and reporting requirements.

30. Upon information and belief Davol and Bard were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

31. Upon information and belief Davol and Bard were aware of the defect in manufacture and design prior to the recall of their Composix Kugel Patch.

32. Upon information and belief, the complications and failures associated with the Composix Kugel Patches and Kugel Patches are not limited to the Composix Kugel Patch sizes which Davol and Bard has already recalled.

33. Upon information and belief, Davol and Bard were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and the Kugel Patches

and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates.

**COUNT I**

**Negligence**

34. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth here.

35. Defendants Davol and Bard were negligent to Plaintiffs in the following respects:

36. Davol and Bard at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

37. Davol and Bard at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to inure the Composix Kugel Patch's users.

38. Davol and Bard so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

39. Davol and Bard were aware of the probable consequences of the Composix Kugel Patch. Davol and Bard knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. Davol and Bard willfully and deliberately failed to avoid those consequences, and

in doing so, Davol and Bard acted in conscious disregard of the safety of Mrs. Goldenstein.

40. Defendants Davol and Bard owed a duty to Mrs. Goldenstein to adequately warn her and her treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

41. Defendants Davol and Bard breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

42. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Mrs. Goldenstein's hernia repair surgery failed, resulting in Mrs. Goldenstein suffering pain and harm.

43. As a direct and proximate result of Davol's and Bard's negligence, Mrs. Goldenstein has suffered injuries and damages.

44. Davol's and Bard's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT II**

**Violation of the Nebraska Deceptive Trade Practices Act**

45. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

46. Defendants Davol and Bard engaged in unfair and deceptive trading practices with Plaintiffs in the following respects:

47. Defendants Davol and Bard are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Kugel Patch for hernia repair surgery.

48. Defendants Davol and Bard knowingly committed unfair and deceptive practices in their study, test design, development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the Composix Kugel Patch for hernia repair surgery.

49. Defendants Davol and Bard knowingly committed unfair and deceptive practices when they failed to safely design and construct an effective Composix Kugel Patch for hernia repair surgery.

50. While Defendants Davol and Bard knew or reasonably should have known that some Compsix Kugel Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the Composix Kugel Patch for hernia repair surgery, specifically that the "memory recoil ring" upon being subjected to stress after placement in the intra-abdominal space posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of sever harm and death to patients.

51. Davol and Bard did not inform the FDA prior to December, 2005, of their knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

52. Davol and Bard did not inform the public at large, or Plaintiff and Plaintiff's physicians, prior to December, 2005, of its knowledge concerning the dangers posed to patients of their Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

53. Davol and Bard failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

54. Davol's and Bard's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the court of their business.

55. Davol's and Bard's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

WHEREFORE, Plaintiffs requests a judgment against Davol and Bard for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and other such relief this Court deems just and appropriate.

## COUNT III

### Strict Product Liability

56. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

57. Defendants Davol and Bard are strictly liable to Plaintiffs in the following respects:

58. Davol and Bard designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

59. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Mrs. Goldenstein's Composix Kugel Patch was a Class I recalled device that failed while in her body causing her to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of her Composix Kugel Patch.

60. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of Davol.

61. The Composix Kugel Patch implanted into Mrs. Goldenstein was being used in a manner reasonably anticipated at the time it was implanted in her by her surgeon.

62. The Composix Kugel Patches, like the one found in Mrs. Goldenstein, at the time they left the possession of Davol and Bard, were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mrs. Goldenstein as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Mrs. Goldenstein;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Goldenstein;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Goldenstein would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. Davol and Bard failed to warn the end user about the dangers and risks of the product;

vii. Davol and Bard knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel patch and/or its components from the initial site of the hernia repair surgery;

x. Any other acts or failure to act by Davol or Bard regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

63. Davol's and Bard's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol and Bard and others from similar conduct it the future.

WHEREFORE, Plaintiffs requests a judgment against Davol and Bard for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and other such relief this Court deems just and appropriate.

## COUNT IV

### Negligent Infliction of Emotional Distress

64. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

65. Defendants Davol and Bard are liable to Plaintiffs for the negligent infliction of emotional distress in the following respect:

66. Plaintiffs suffered sever emotional distress, which was a result of Defendants'

negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

67. Plaintiff suffered severe emotional distress, which was as a result of Davol's and Bard's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

68. Therefore, Davol and Bard are liable to Plaintiffs.

69. Davol's and Bard's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V

### Intentional Infliction of Emotional Distress

70. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

71. Defendants Davol and Bard are liable to Plaintiffs for the intentional infliction of emotional distress in the following respect:

72. Plaintiffs suffered severe emotional distress, which was as a result of Davol's and

Bard's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

73. Plaintiffs suffered severe emotional distress, which was a result of Davol's and Bard's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mrs. Goldenstein.

74. Therefore, Davol and Bard are liable to Plaintiffs.

75. Davol's and Bard's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

WHEREFORE, Plaintiffs request a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNTY VI**

**Breach of Implied Warranty**

76. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

77. Defendants Davol and Bard are liable to Plaintiffs for their breach of implied warranty in the following respect:

78. Davol and Bard sold the Kugel Patch which was implanted in Mrs. Goldenstein. Davol and Bard impliedly warranted to Mrs. Goldenstein, her physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

79. Davol and Bard knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

80. Mrs. Goldenstein, her physicians and health care providers reasonably relied on Davol's and Bard's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

81. When the Composix Kugel Patches were distributed into the stream of commerce and sold by Davol and Bard, they were unsafe for their intended use, and not of merchantable quality, as warranted by Davol and Bard in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury or harm or death to the end user.

82. Mrs. Goldenstein suffered such injuries and damages as a result of Davol and Bard's conduct and actions.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Davol and Bard for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

**<u>COUNTY VII</u>**

**Failure to Warn**

83. Plaintiffs re-allege and incorporate by reference each and every allegation

contained in preceding paragraphs as though fully set forth herein.

84. In the course of business, Davol and Bard designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

85. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mrs. Goldenstein received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

86. Bard and Davol failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. Bard and Davol failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and sever peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

87. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time, Mrs. Goldenstein had her hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

88. Mrs. Goldenstein did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

89. Mrs. Goldenstein suffered the aforementioned injuries and damages as a direct result of Davol and Bard's failure to warn.

90. The conduct of Bard and Davol in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Bard and Davol and others from similar conduct.

WHEREFORE, Plaintiffs respectfully requests judgment in their favor against Davol and Bard for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

## COUNT VIII

### Fraud

91. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

92. In the course of business, Davol and Bard designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

93. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mrs. Goldenstein receive the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

94. Bard and Davol was aware of the dangerous and defective condition of the products and intentionally withheld this information from Mrs. Goldenstein, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post-surgical complication had arisen.

95. Bard and Davol fraudulently presented to Plaintiffs, Mrs. Goldenstein's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel Patch could and would cause injuries such as those suffered by Plaintiffs.

96. Plaintiffs and Mrs. Goldenstein's physicians, relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugal Patch to be implanted.

97. As a direct and proximate result of Plaintiff's reliance on Bard and Davol's fraudulent misrepresentation and concealments, Mrs. Goldenstein was seriously and permanently injured.

98. The conduct of Bard and Davol in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Bard, Davol and others from similar conduct.

WHEREFORE, Plaintiffs respectfully requests judgment in her favor and against Davol and Bard for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

## COUNT IX

### Misrepresentation by Omission

99. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

100. Defendants misrepresented the mechanical soundness and reliability of the Kugel

Composix Hernia Patches to the general public through promotional and marketing campaigns. Defendants continued this misrepresentation for an extended period of time, without disclosing material information regarding the defective, hazardous, and harmful complications relating to the Kugel Composix Hernia Patches.

101. Defendants took advantage of the limited ability Plaintiffs had to discover Defendants' strategic and intentional concealment of the defects in their Kugel Composix Hernia Patches.

102. Defendants concealed these design and/or manufacturing defects form the public by withholding information pertaining to the inherent design and/or manufacturing defects and high risks of failure relating to the Kugel Composix Hernia Patches, and presenting the devices as sound and reliable.

103. Defendants' intentional misrepresentations and omissions were made willfully, wantonly or recklessly to Plaintiffs, the public at large, and Plaintiff's surgeons to induce the purchase of Defendants' Kugel Composix Hernia Patch over other hernia mesh repair systems on the market.

104. Defendants knew or should have known of the high risk the Plaintiff would encounter by unwittingly agreeing to have implanted one of Defendants' defectively designed and/or manufacture Kugel Composix Hernia Patches.

WHEREFORE, Plaintiffs request a judgment against Davol and Bard for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT X**

**Loss of Consortium**

105. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

106. AS a direct and proximate result of the Defendants' said negligence and conduct as detailed above and herein, Plaintiffs, Leonard R. Goldenstein, was caused to lose the consortium and society of the Plaintiff's spouse, Elaine Goldenstein.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Davol and Bard for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

ELAINE GOLDENSTEIN and LEONARD R. GOLDENSTEIN, Plaintiffs,

By: ______________________________

Christopher P. Welsh, #22279
James R. Welsh, #14459
WELSH & WELSH, P.C., L.L.O.
2027 Dodge Street, Suite 400
Omaha, Nebraska 68102
(402) 384-8160
(402) 384-8211 (fax)
ATTORNEY FOR PLAINTIFFS

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.: 5:07-cv-360-Oc-10GRJ

CLARA M. LORD and
KENNY LORD, her husband,

Plaintiffs,

v.

DAVOL, INC., a Rhode Island Corporation
for profit and C.R. BARD, INC.,
a New Jersey Corporation for profit,

Defendants.
_______________________________________/

FILED
9/4/07
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA, FLORIDA

**COMPLAINT FOR DAMAGES**

Plaintiffs, CLARA M. LORD and KENNY LORD, sue Defendants, DAVOL, INC., a Rhode Island Corporation for Profit and C.R. BARD, INC., a New Jersey Corporation for Profit, and allege:

***Parties***

1. At all times material, Plaintiffs, CLARA M. LORD and KENNY LORD, were and are citizens of Lake County, Florida.

2. Defendant, DAVOL, INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy. DAVOL conducts business throughout the United States and further is registered to do business in the state of Florida, directly and

indirectly through its agents and distributors to such an extent that it avails itself of the jurisdiction of this court.

3. Defendant, C. R. BARD, INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD conducts business throughout the United States and further is registered to do business in the state of Florida, directly and indirectly through its agents and distributors to such an extent that it avails itself of the jurisdiction of this court.

***Jurisdiction and Venue***

4. The matter in controversy exceeds $75,000, exclusive of interest and costs, as specified by 28 U.S.C. § 1332.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), as Plaintiff obtained, purchased and used the Kugel Patch that forms the basis of this lawsuit in this Middle Federal District of Florida; at all relevant times, Plaintiff resided within this District; the injury sued upon occurred in this District; and Defendants marketed, advertised, sold and distributed the Kugel Patch in this District.

***Facts***

6. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into CLARA M. LORD'S body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into CLARA M. LORD'S body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

9. On or about February 20, 2003, CLARA M. LORD underwent surgery at South Lake Hospital in Lake County, Florida, to repair a ventral hernia. A 8" x 10" Kugel Patch was used to repair the hernia.

10. The Kugel Patch hernia repair product implanted in CLARA M. LORD was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice. Subsequent Class I recalls occurred on March 31, 2006, and January 24, 2007.

12. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health

13. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

14. On or about October 3, 2006, CLARA M. LORD underwent an exploratory laparotomy with removal of the Kugel Patch.

15. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

16. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

17. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

18. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

## *COUNT I*
## ***Negligence***

CLARA M. LORD re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

19. Defendants DAVOL and BARD were negligent to CLARA M. LORD in the following respects:

20. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label. distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

21. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured. tested, inspected, packaged, labeled. distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

22. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test. inspected, failed to inspect, packaged. labeled,

distributed, recommended. displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

23. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of CLARA M. LORD.

24. Defendants DAVOL and BARD owed a duty to CLARA M. LORD to adequately warn her and her treating physicians. of the risks of breakage. separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

25. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

26. As a direct and proximate result of the duties breached, the Kugel Patch used in CLARA M. LORD's hernia repair surgery failed, causing CLARA M. LORD bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature,

and Plaintiff will suffer these losses in the future.

**WHEREFORE**, CLARA M. LORD sues DAVOL and BARD and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

***COUNT II***
***Strict Product Liability***

CLARA M. LORD re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

27. Defendants DAVOL and BARD are strictly liable to CLARA M. LORD in the following respects:

28. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

29. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. CLARA M. LORD's Kugel Patch was a Class I recalled device that failed while in his body causing her to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch.

30. At all times material, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

31. The Kugel Patch implanted into CLARA M. LORD was being used in a manner reasonably anticipated at the time it was implanted in her by his surgeon.

32. The Kugel Patches, like the one found in CLARA M. LORD, at the time

they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to CLARA M. LORD as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to CLARA M. LORD;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to CLARA M. LORD;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient. like CLARA M. LORD, would expect:

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user:

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space:

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing. manufacturing, inspecting, producing, advertising, marketing, promoting, distributing. and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

33. As a direct and proximate result, the Kugel Patch used in CLARA M. LORD's hernia repair surgery failed. causing CLARA M. LORD bodily injury and

resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings. loss of the ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE**, CLARA M. LORD sues DAVOL and BARD and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

***COUNT III***
***Breach of Implied Warranty***

CLARA M. LORD re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

34. Defendants DAVOL and BARD are liable to CLARA M. LORD for their breach of implied warranty in the following respect:

35. DAVOL and BARD sold the Kugel Patch which was implanted in CLARA M. LORD. DAVOL and BARD impliedly warranted to CLARA M. LORD, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

36. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

37. CLARA M. LORD, her physicians and health care providers reasonably

relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

38. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

**WHEREFORE**, CLARA M. LORD sues DAVOL and BARD and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

***COUNT IV***
***<u>Florida's Deceptive & Unfair Trade Practices Act ("FDUTPA")</u>***

CLARA M. LORD re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

39. DAVOL and BARD's actions are deceptive and in clear violation of FDUTPA, entitling CLARA M. LORD to damages and relief under Fla. Stat. §§ 501.201-213.

40. CLARA M. LORD was a consumer within the meaning of FDUTPA, who was deceptively and unlawfully induced to purchase and/or have a Kugel Patch implanted in her body.

41. Florida Statutes, Section 501.204 makes unfair and/or deceptive trade

practices in the conduct of any trade or commerce illegal.

42. Florida Statutes, Section 501.211 creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

43. Florida Statutes, Section 501.2105 provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein from the non prevailing party.

44. Florida Statutes, Section 501.213 provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

45. Florida Statutes, Section 501.203 (3)(c) states that a person has violated the Florida Deceptive and Unfair Trade Practices Act if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

46. DAVOL and BARD engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce a defective product and/or device which it knew or should have known was defective which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUTPA.

47. DAVOL and BARD's acts constitute unconscionable, deceptive, or unfair acts or practices in violation of FDUTPA.

48. As a result of DAVOL and BARD's unfair and deceptive trade practices,

in violation of the FDUTPA, CLARA M. LORD is entitled to actual damages resulting from the purchase of the Kugel Patch.

49. As a result of DAVOL and BARD's unfair and deceptive trade practices, in violation of the FDUTPA, CLARA M. LORD is entitled to an award of attorney's fees and court costs, if she prevails.

**WHEREFORE,** CLARA M. LORD sues DAVOL and BARD and demands judgment for actual damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, attorney's fees and court costs, and demands trial by jury of all issues so triable.

***COUNT V***
***<u>Loss of Consortium</u>***

KENNY LORD re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-49 as though fully set forth herein.

50. As a further direct and proximate cause of the above-described negligence, Plaintiff, KENNY LORD, has suffered and will continue to suffer for the indefinite future, the loss of his wife's society, services, consortium and support.

**WHEREFORE,** Plaintiff, KENNY LORD, sues DAVOL and BARD and demands judgment for actual damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

DATED this 21st day of August, 2007.

THE ALVAREZ LAW FIRM
Attorneys for the Plaintiff
355 Palermo Avenue
Coral Gables, FL 33134
Telephone: (305) 444-7675
Facsimile: (305) 444-0075
Email: alex@integrityforjustice.com

BY: ______________________
ALEX ALVAREZ
Florida Bar No. 94634

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

2007 JUL 25 PM 4:02

CLERK U.S. DIST. CT.
S.D. OF FL. - MIAMI

Case No.: 07-21928 CIV-HUCK

MAGISTRATE JUDGE
SIMONTON

ANTONIO SANCHEZ,

Plaintiff,

v.

DAVOL, INC., a Rhode Island Corporation
for profit and C.R. BARD, INC.,
a New Jersey Corporation for profit,

Defendants.

______________________________/

**COMPLAINT FOR DAMAGES**

Plaintiff, ANTONIO SANCHEZ, sues Defendants, DAVOL, INC. a Rhode Island Corporation for Profit and C.R. BARD, INC., a New Jersey Corporation for Profit, and alleges:

**Parties**

1. At all times material, Plaintiff, ANTONIO SANCHEZ, was and is a citizen of Miami-Dade County, Florida.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy. DAVOL conducts business throughout the United States and further is registered to do business in the state of Florida, directly and indirectly through its agents and distributors to such an extent that it avails itself of the

jurisdiction of this court.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD conducts business throughout the United States and further is registered to do business in the state of Florida, directly and indirectly through its agents and distributors to such an extent that it avails itself of the jurisdiction of this court.

***Jurisdiction and Venue***

4. The matter in controversy exceeds $75,000, exclusive of interest and costs, as specified by 28 U.S.C. § 1332.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), as Plaintiff obtained, purchased and used the Kugel Patch that forms the basis of this lawsuit in Southern Federal District of Florida; at all relevant times, Plaintiff resided within this District; the injury sued upon occurred in this District; and Defendants marketed, advertised, sold and distributed the Kugel Patch in this District.

***Facts***

6. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into ANTONIO SANCHEZ's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into ANTONIO SANCHEZ's body.

8. The Defendants submitted their 510k Application to the Federal Drug

Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

9. On or about March 20, 2006, ANTONIO SANCHEZ underwent surgery at Hialeah Hospital in Miami-Dade County, Florida, to repair a ventral (incisional) hernia. A 5.4" x 7" Kugel Patch was used to repair the hernia.

10. The Kugel Patch hernia repair product implanted in ANTONIO SANCHEZ was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice. Subsequent Class I recalls occurred on March 31, 2006, and January 24, 2007.

12. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health

13. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

14. On or about April 25, 2007, ANTONIO SANCHEZ underwent an exploratory laparotomy with removal of the Kugel Patch.

15. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

16. Upon information and belief DAVOL and BARD failed to comply with

the FDA application and reporting requirements.

17. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

18. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

## *COUNT I*
## ***Negligence***

ANTONIO SANCHEZ re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

19. Defendants DAVOL and BARD were negligent to ANTONIO SANCHEZ in the following respects:

20. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

21. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

22. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the

Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

23. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of ANTONIO SANCHEZ.

24. Defendants DAVOL and BARD owed a duty to ANTONIO SANCHEZ to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

25. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

26. As a direct and proximate result of the duties breached, the Kugel Patch used in ANTONIO SANCHEZ's hernia repair surgery failed, causing ANTONIO SANCHEZ bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE,** ANTONIO SANCHEZ sues DAVOL and BARD and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

***COUNT II***
***Strict Product Liability***

ANTONIO SANCHEZ re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

27. Defendants DAVOL and BARD are strictly liable to ANTONIO SANCHEZ in the following respects:

28. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

29. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. ANTONIO SANCHEZ's Kugel Patch was a Class I recalled device that failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch.

30. At all times material, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

31. The Kugel Patch implanted into ANTONIO SANCHEZ was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

32. The Kugel Patches, like the one found in ANTONIO SANCHEZ, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted

an unreasonable risk of danger and injury to ANTONIO SANCHEZ as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to ANTONIO SANCHEZ;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to ANTONIO SANCHEZ;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like ANTONIO SANCHEZ, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

33. As a direct and proximate result, the Kugel Patch used in ANTONIO SANCHEZ's hernia repair surgery failed, causing ANTONIO SANCHEZ bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care

and treatment, loss of earnings, loss of the ability to earn money and aggravation of a previously existing condition. These losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future.

**WHEREFORE,** ANTONIO SANCHEZ sues DAVOL and BARD and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

***COUNT III***
***Breach of Implied Warranty***

ANTONIO SANCHEZ re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

34. Defendants DAVOL and BARD are liable to ANTONIO SANCHEZ for their breach of implied warranty in the following respect:

35. DAVOL and BARD sold the Kugel Patch which was implanted in ANTONIO SANCHEZ. DAVOL and BARD impliedly warranted to ANTONIO SANCHEZ, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

36. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

37. ANTONIO SANCHEZ, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

38. When the Kugel Patches were distributed into the stream of commerce and

sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

**WHEREFORE**, ANTONIO SANCHEZ sues DAVOL and BARD and demands judgment for compensatory damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, costs and demands trial by jury of all issues so triable.

***COUNT IV***

***Florida's Deceptive & Unfair Trade Practices Act ("FDUTPA")***

ANTONIO SANCHEZ re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-18 as though fully set forth herein.

39. DAVOL and BARD's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff to damages and relief under Fla. Stat. §§ 501.201-213.

40. Plaintiff was a consumer within the meaning of FDUTPA, who was deceptively and unlawfully induced to purchase and/or have a Kugel Patch implanted in his body.

41. Florida Statutes, Section 501.204 makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

42. Florida Statutes, Section 501.211 creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

43. Florida Statutes, Section 501.2105 provides that the prevailing party in

litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein from the non prevailing party.

44. Florida Statutes, Section 501.213 provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

45. Florida Statutes, Section 501.203 (3)(c) states that a person has violated the Florida Deceptive and Unfair Trade Practices Act if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

46. DAVOL and BARD engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce a defective product and/or device which it knew or should have known was defective which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUTPA.

47. DAVOL and BARD's acts constitute unconscionable, deceptive, or unfair acts or practices in violation of FDUTPA.

48. As a result of DAVOL and BARD's unfair and deceptive trade practices, in violation of the FDUTPA, Plaintiff is entitled to actual damages resulting from the purchase of the Kugel Patch.

49. As a result of DAVOL and BARD's unfair and deceptive trade practices, in violation of the FDUTPA, Plaintiff is entitled to an award of attorney's fees and court costs, if he prevails.

**WHEREFORE**, Plaintiff sues DAVOL and BARD and demands judgment for actual damages in excess of the minimal jurisdictional limits of this court, prejudgment and post judgment interest as allowed by law, attorney's fees and court costs, and demands trial by jury of all issues so triable.

DATED this 24 day of July, 2007.

THE ALVAREZ LAW FIRM
Attorneys for the Plaintiff
355 Palermo Avenue
Coral Gables, FL 33134
Telephone: (305) 444-7675
Facsimile: (305) 444-0075
Email: alex@integrityforjustice.com

BY: ______________________
ALEX ALVAREZ
Florida Bar No. 94634

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

07-21928

**I. (a) PLAINTIFFS**
ANTONIO SANCHEZ,

**DEFENDANTS**
DAVOL, INC., a Rhode Island Corporation for profit, et al.

(b) County of Residence of First Listed Plaintiff: Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Providence
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

CIV - HUCK

(c) Attorney's (Firm Name, Address, and Telephone Number)
THE ALVAREZ LAW FIRM
355 Palermo Avenue, Coral Gables, FL 33134 / (305) 444-7675

Attorneys (If Known)

MAGISTRATE JUDGE
SIMONTON

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) × MIAMI-DADE COUNTY

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

DADE-07-21928-CV-HUCK-SIMONTON

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☒ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 USC 1332, 1391
Brief description of cause: Defendant sold a defective product causing injury to Plaintiff

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): U.S. DISTRICT COURT, DISTRICT OF RHODE ISLAND
JUDGE MARY M. LISI DOCKET NUMBER MDL 07-1842-ML

DATE 7/24/07 SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 963863 AMOUNT $350.00 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

07/26/07

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

NEIL MONTGOMERY, JR. and STORMI MONTGOMERY,

Plaintiff,

v.

Case No: 3:07cv 176-RV/EMT

DAVOL, INC.; and
C.R. BARD, INC.

Defendant.

**COMPLAINT AND JURY DEMAND**

**Complaint**

1. Plaintiffs, NEIL MONTGOMERY, JR. and STORMI MONTGOMERY are citizens and residents of the County of Escambia, State of Florida. Hereinafter, Plaintiff Neil Montgomery, Jr. will be referred to as "Plaintiff" and Plaintiff Stormi Montgomery will be referred to as "Plaintiff Stormi Montgomery".

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.
07 APR 20 AM 10: 38
FILED

the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

**Jurisdiction and Venue**

4. The Court has jurisdiction over this action because the claim is valued at more than $75,000, and there is complete diversity of citizenship.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in the District.

**Facts**

6. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into the Plaintiff's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Plaintiff's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application, the Kugel Patch was authorized by the FDA as a Class II medical device.

9. On April 4, 2006, Plaintiff underwent surgery at Naval Hospital Pensacola to repair an incisional hernia. A 5.4" x 7.0" Kugel Patch (Reference No. 0010202; Lot No. 43AOD063) was

used to repair the defect. The operative report says that "numerous staples were utilized firmly anchoring the patch in place."

10. The Kugel Patch hernia repair product implanted in Plaintiff was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. In the months that followed the surgery, Plaintiff developed abdominal tenderness and severe pain at the site of his incisional hernia repair. A CAT scan was carried out and confirmed that Plaintiff was suffering from a broken mesh and recurrent hernia.

12. A FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

13. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a FDA Class I recall notice.

14. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death related to the Kugel Patch have been reported.

15. On March 31, 2006, the initial Class I recall on the Kugel Patch was expanded to include the type of Kugel Patch used in Plaintiff's ventral hernia repair.

16. In or around March 2007, Plaintiff learned for the first time that the hernia repair mesh implanted in him on April 4, 2006 was a defective Kugel Mesh and was part of a national recall.

17. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

18. Plaintiff has incurred substantial medical bills, and has lost wages.

19. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

20. Upon information and belief, DAVOL and BARD failed to comply with the FDA application and reporting requirements.

21. Upon information and belief, DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

22. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

**COUNT I**

**Negligence**

23. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-22 as though fully set forth herein:

24. Defendants DAVOL and BARD were negligent to Plaintiff in the following respects:

25. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use in the general public, the Kugel Patch.

26. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were reasonably likely to injure Kugel Patch

users.

27. DAVOL and BARD negligently and carelessly designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined and/or supplied the Kugel Patch such that the product was dangerous and unsafe for the use and purpose for which it was intended.

28. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, they acted in conscious disregard of the safety of Plaintiff.

29. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

30. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

31. As a direct and proximate result of the duties breached, the Kugel Patch used in Plaintiff's hernia repair surgery failed, resulting in Plaintiff suffering pain and harm.

32. As a direct and proximate result of DAVOL's and BARD's negligence, Plaintiff has suffered injuries and damages.

33. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended,

showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II

### Loss of Consortium

34. Plaintiff hereby incorporates and realleges the General Allegations, paragraphs 23 through 33, as if fully set forth herein.

35. Plaintiff Stormi Montgomery is and at all times relevant hereto has been the lawful spouse of Plaintiff, and as such, she is entitled to the comfort and enjoyment of her society and services.

36. As a direct and proximate result of the foregoing misconduct of the Defendants, Plaintiff Stormi Montgomery has been deprived of her spouse's companionship, services, solace, consortium, affection and attention to which she is entitled.

37. As a result of the foregoing, Plaintiff Stormi Montgomery has been and will continue to be injured and damaged.

Wherefore, Plaintiff demands judgment for all damages available to her under the law as a result of the Defendants' conduct as alleged herein and such other relief as this Court deems just and appropriate.

## COUNT III

**Strict Product Liability**

38. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-37 as though fully set forth herein.

39. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects: DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery; the Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. Plaintiff's Kugel Patch was a Class I recalled device that failed while in his body, causing him to develop serious physical complications, which will require subsequent, painful and unnecessary removal surgery of his Kugel Patch; at all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL; and the Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

40. Furthermore, the Kugel Patches, like the one found in Plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to

Plaintiff;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or

sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

41. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV

### Negligent Infliction of Emotional Distress

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-41 as though fully set forth herein.

43. Defendants DAVOL and BARD are liable to Plaintiff for the negligent infliction of emotional distress in the following respect: Plaintiff suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

44. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

Case 3:07-cv-00176-RV-EMT Document 1 Filed 04/20/2007 Page 10 of 14

45. Therefore, DAVOL and BARD are liable to Plaintiff.

46. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V

### Intentional Infliction of Emotional Distress

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-46 as though fully set forth herein.

48. Defendants DAVOL and BARD are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

49. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete

and reckless disregard of safety to Plaintiff.

50. Therefore, DAVOL and BARD are liable to Plaintiff.

51. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT VI**

**Breach of Implied Warranty**

52. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-51 as though fully set forth herein.

53. Defendants DAVOL and BARD are liable to Plaintiff for their breach of implied warranty in the following respect: DAVOL and BARD sold the Kugel Patch, which was implanted in Plaintiff. DAVOL and BARD impliedly warranted to Plaintiff, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

54. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

55. Plaintiff, his physicians and health care providers reasonably relied on DAVOL's and

BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

56. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

57. Plaintiff suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**COUNT VII**

**Failure to Warn**

58. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-57 as though fully set forth herein.

59. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to Naval Hospital of Pensacola for hernia repair surgeries.

60. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patch, it were defective and unreasonably dangerous when put to it's intended and reasonably anticipated use. Further, the Kugel Patche was not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

61. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product. BARD and DAVOL failed to warn of the known or

knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

62. The dangerous and defective conditions in the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

63. Plaintiff did not know at the time of use of the Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Kugel Patch.

64. Plaintiff suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

65. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore,** Plaintiff respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

Dated this 19th day of April, 2007.

**A TRIAL BY JURY IS REQUESTED ON ALL COUNTS.**

Plaintiff, NEIL MONTGOMERY, JR.,
By his Attorneys,

R. Jason Richards
FL Bar # 0018207
Neil D. Overholtz
FL Bar #0188761
Aylstock, Witkin, Kreis & Overholtz, PLLC
4400 Bayou Boulevard, Ste 58A
Pensacola, Florida 32503
Phone: (850) 916-7450
Facsimile: (850) 916-7449
jrichards@awkolaw.com
noverholtz@awkolaw.com

Case 1:08-cv-01663-RCL Document 1-2 Filed 09/11/2008 Page 8 of 15

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| DAVID AND TERRI STATON,<br><br>Plaintiffs,<br><br>v.<br><br>DAVOL INC.; C. R. BARD, INC.; A; B; C; D; E; F; G; H; I; J; K; L; M; N,<br><br>Defendants. | ) | Civil Action No.: ____________ |

**NOTICE OF REMOVAL**

Defendants Davol Inc. and C. R. Bard, Inc. ("Defendants"), by their undersigned counsel, hereby remove the above-captioned matter from the Circuit Court for Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In support of removal, Defendants respectfully state:

1. Plaintiffs filed this action in the Circuit Court for Jefferson County, Alabama, on April 18, 2007. Defendants were served on May 4, 2007.

2. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendants have satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1441(a).

## I. Defendants Have Satisfied the Procedural Requirements for Removal

3. Removal is timely. Defendants were served with a copy of the Complaint on May 4, 2007. *See* Att. A (copy of all process, pleadings, and orders served upon, including the summons and complaint). This Notice of Removal is being filed within 30 days of the first date on which Defendants received a copy of the Complaint through service, and so is timely pursuant to 28 U.S.C. § 1446(b).

4. Venue is proper. The Circuit Court for Jefferson County, Alabama is located within the Northern District of Alabama, Southern Division, and, therefore, venue is proper in this Court pursuant to 28 U.S.C. § 81(a)(3) because it is "the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. No further proceedings have been had in the state court action.

6. No previous application has been made for the relief requested herein.

7. A copy of the written notice required by 28 U.S.C. § 1446(d) is attached as Att. B and is being filed in the Circuit Court for Jefferson County, Alabama and served on Plaintiffs.

## II. Removal is Proper in This Case

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.

### A. Complete diversity exists between Plaintiffs and Defendants.

9. Plaintiffs are residents of Jefferson County, Alabama.

10. Davol and Bard are, and have been at all relevant times, corporations incorporated under the law of the states of Delaware and New Jersey respectively, with

their principal places of business in Rhode Island and New Jersey. For purposes of determining jurisdiction pursuant to 28 U.S.C § 1332(c)(1), therefore, Davol and Bard are not citizens of the state of Alabama.

11. The naming of fictitious defendants, namely A through N, is disregarded in making determinations regarding removal. *See* 28 U.S.C. § 1441(a).

**B. The amount in controversy requirement is satisfied.**

12. The Complaint seeks damages against Defendants in the amount of $2,000,000.

WHEREFORE, Defendants respectfully remove this action from the Circuit Court for Jefferson County, Alabama to this Court pursuant to 28 U.S.C. § 1441.

Dated: June 4, 2007

Respectfully submitted,

Crawford McGivaren, Jr. MCG008
Melanie M. Bass MER013
Cabaniss, Johnston, Gardner, Dumas & O'Neal LLP
2001 Park Place North
Suite 700
Birmingham, AL 35203
(205) 716-5200

*COUNSEL FOR DEFENDANT DAVOL, INC. AND DEFENDANT C.R. BARD, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the foregoing on all parties to this proceeding, or their attorney of record, as follows:

Mr. Frank O. Hanson, Jr.
4401 Gary Avenue
Fairfield, Alabama 35064

by placing the same in the United States mail, first class postage prepaid and properly addressed this 4th day of June 2007.

OF COUNSEL

# ATTACHMENT A

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93 Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>01-CV-200<br>Date of Filing:<br>04/18/2007 |
|---|---|---|

ELECTRONICALLY FILED
4/18/2007 3:24 PM
CV-2007-900670.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## GENERAL INFORMATION

**IN THE CIRCUIT OF JEFFERSON COUNTY, ALABAMA**
**DAVID BRUCE STATON ET AL v. DAVOL, INC. ET AL**

**First Plaintiff:** ☐ Business ☑ Individual ☐ Government ☐ Other

**First Defendant:** ☑ Business ☐ Individual ☐ Government ☐ Other

**NATURE OF SUIT:**

**TORTS: PERSONAL INJURY**

- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonnes
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: ______________

**TORTS: PERSONAL INJURY**

- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**

- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP-Contempt of Court
- ☐ CONT-Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD-Eviction Appeal/Unlawfyul Detainer
- ☐ FORJ-Foreign Judgment
- ☐ FORF-Fruits of Crime Forfeiture
- ☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB-Protection From Abuse
- ☐ FELA-Railroad/Seaman (FELA)
- ☐ RPRO-Real Property
- ☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP-Workers' Compensation
- ☐ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ **INITIAL FILING** A ☐ **APPEAL FROM DISTRICT COURT** O ☐ **OTHER**

R ☐ **REMANDED** T ☐ **TRANSFERRED FROM OTHER CIRCUIT COURT** ______________

**HAS JURY TRIAL BEEN DEMANDED?** ☑ **Yes** ☐ **No**

**RELIEF REQUESTED:** ☑ **MONETARY AWARD REQUESTED** ☐ **NO MONETARY AWARD REQUESTED**

**ATTORNEY CODE:** HAN007 4/18/2007 3:24:54 PM /s FRANK HANSON

**MEDIATION REQUESTED:** ☑ **Yes** ☐ **No** ☐ **Undecided**

ELECTRONICALLY FILED
4/18/2007 3:37 PM
CV-2007-900670.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA

DAVID STATON & TERRI STATON

Plaintiffs,

Vs. CIVIL ACTION NO.: ________________

DAVOL, INC.;
C. R. BARD, INC.;

A, whether singular or plural, that hospital, clinic, or other health care facility which undertook to provide medical services to Plaintiff, DAVID STATON, (hereinafter referred to as "Plaintiff"), on the occasion made the basis of this suit, the negligence, breach of contract, or other actionable conduct of which contributed to Plaintiff's injuries;

B, whether singular or plural, that entity which undertook to provide medical-diagnostic, -rehabilitative, -technical, or –therapeutic services to Plaintiff on the occasion made the basis of this suit, the negligence, breath of contract, or other actionable conduct of which, contributed to cause Plaintiff's injuries;

C, whether singular or plural, that medical partnership, professional association, or professional corporation which undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiff's injuries;

D, whether singular or plural, that person who, as an owner, stockholder, partner, associate, employee, or agent of any of the fictitious parties described above in items A through C, inclusive, undertook to provide health care or related services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiff's injuries;

E, whether singular or plural, that physician (including an intern, resident, or fellow), who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

F, whether singular or plural, that nurse, who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

G, whether singular or plural, that medical services therapist, technician, or worker who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

H, whether singular or plural, that student health care practitioner who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

I, whether singular or plural, that entity which designed or manufactured any product which contributed to cause Plaintiff's injuries on the occasion made the basis of this suit;

J, whether singular or plural, that entity which in anywise participated in any testing of any product which contributed to cause Plaintiff's injuries, on the occasion made the basis of this suit;

K, whether singular or plural, that entity which had any role in the distribution of any product which contributed to cause Plaintiff's injuries on the occasion made the basis of this suit;

L, whether singular or plural, that entity which, concerning the occasion made the basis of this suit, was the principal of any of the named or above-described fictitious party defendants;

M, whether singular or plural, that entity which is the successor-in-interest of any of the named or above-described fictitious party defendants; and

N, whether singular or plural, that entity, other than those described above, the negligence, breach of contract, or other wrongful conduct of which contributed to cause Plaintiff's injuries on the occasion made the basis of this suit. (Plaintiff avers that the identity of the fictitious party defendants is otherwise unknown to Plaintiff at this time, or, if their names are known to Plaintiff at this time, their identity as proper party defendants is not known to Plaintiff at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

Defendants.

**COMPLAINT**

**COUNT I**

1. On or about April 19, 2005, DAVID STATON (hereinafter referred to as PLAINTIFF) was a patient receiving medical services for consideration at BAPTIST MEDICAL CENTER PRINCETON. Said care was rendered by GREGORY THOMAS, M.D. Said

medical care involved the surgical use and placement of a BARD COMPOSITE/COMPOSIX KUGEL HERNIA PATCH device/product designed, manufactured, marketed and/or sold by the defendants DAVOL, INC. and C. R. BARD, INC. and/or Fictitious defendants H, I, J, K, L, M, and/or N. All medical services were rendered in Jefferson County, Alabama.

2. Defendants, A, B, C, D, E, F, G, H, I, J, K, L, M and N whose more correct names and identities are unknown to Plaintiff but will be correctly named and identified when ascertained, are the respective entities or which fit the description below:

A, whether singular or plural, that hospital, clinic, or other health care facility which undertook to provide medical services to Plaintiff, DAVID STATON, (hereinafter referred to as "Plaintiff"), on the occasion made the basis of this suit, the negligence, breach of contract, or other actionable conduct of which contributed to Plaintiff's injuries;

B, whether singular or plural, that entity which undertook to provide medical-diagnostic, -rehabilitative, -technical, or –therapeutic services to Plaintiff on the occasion made the basis of this suit, the negligence, breath of contract, or other actionable conduct of which, contributed to cause Plaintiff's injuries;

C, whether singular or plural, that medical partnership, professional association, or professional corporation which undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiff's injuries;

D, whether singular or plural, that person who, as an owner, stockholder, partner, associate, employee, or agent of any of the fictitious parties described above in items A through C, inclusive, undertook to provide health care or related services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiff's injuries;

E, whether singular or plural, that physician (including an intern, resident, or fellow), who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

F, whether singular or plural, that nurse, who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

G, whether singular or plural, that medical services therapist, technician, or worker who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

H, whether singular or plural, that student health care practitioner who undertook to provide medical services to Plaintiff on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiff's injuries;

I, whether singular or plural, that entity which designed or manufactured any product which contributed to cause Plaintiff's injuries on the occasion made the basis of this suit;

J, whether singular or plural, that entity which in anywise participated in any testing of any product which contributed to cause Plaintiff's injuries, on the occasion made the basis of this suit;

K, whether singular or plural, that entity which had any role in the distribution of any product which contributed to cause Plaintiff's injuries on the occasion made the basis of this suit;

L, whether singular or plural, that entity which, concerning the occasion made the basis of this suit, was the principal of any of the named or above-described fictitious party defendants;

M, whether singular or plural, that entity which is the successor-in-interest of any of the named or above-described fictitious party defendants; and

N, whether singular or plural, that entity, other than those described above, the negligence, breach of contract, or other wrongful conduct of which contributed to cause Plaintiff's injuries on the occasion made the basis of this suit. (Plaintiff avers that the identity of the fictitious party defendants is otherwise unknown to Plaintiff at this time, or, if their names are known to Plaintiff at this time, their identity as proper party defendants is not known to Plaintiff at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained).

3. Plaintiff alleges that the conduct of each of the named defendants, and also the above-described defendants A, B, C, D, E, F, G, H, I, J, K, L, M and N, combined and concurred, and proximately caused him to contract a severe, life-threatening and disabling infection, and infection complications, surgical complications, failure of hernia surgery, abdominal and intestinal complications, permanent impairment, injury and disability and will in the future require additional medical care and surgery. It has further caused him severe physical, mental and emotional pain and suffering and fear for his medical health and well being.

4. On or about April 19, 2005, and for some time prior to and thereafter, defendants DAVOL, INC. (hereinafter referred to as DAVOL) and C. R. BARD, INC. (hereinafter referred to as BARD) and/or the fictitious party defendants, I, J, K, L, M and N listed and described in the caption hereof, were engaged in the business of formulating, developing, manufacturing, selling and/or distributing said **BARD COMPOSITE/COMPOSIX**

**KUGEL HERNIA PATCH** device/equipment/system (hereinafter referred to as the "device/equipment/system") and/or its component parts throughout the United States, including the State of Alabama, for use by certain members of the general public. Said defendants during said period of time and for a valuable consideration developed, designed, manufactured, leased, sold and/or distributed the said equipment/system and/or its component parts involved in the occurrence made the basis of this suit.

At the aforesaid time and place, the said device/equipment/system and/or its component parts were in substantially the same condition as when manufactured, sold and/or distributed, and was being used in a manner that was foreseeable. The said device/equipment/system and/or its component parts were not reasonably safe when being used in a foreseeable manner, but to the contrary, were defective and unreasonably dangerous to the human body when being so used. Said defendants knew, or in the exercise of reasonable care should have known, that said device/equipment/system and/or its component parts were unreasonably dangerous to the human body when being so used in a foreseeable manner.

The foregoing wrongful conduct of said defendants was a proximate cause of the plaintiff's injuries and damages and renders said defendants liable to plaintiff pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

a. In the event the said named and fictitious party defendants were not the original designers, manufacturers or, distributors of said device/equipment/system and/or its component parts, they are liable as the predecessors or successors of the original designers, manufacturers or distributors.

5. The defendants DAVOL and/or BARD and/or fictitious party defendants I, J, K, L, M and N listed and described in the caption hereof, negligently or wantonly formulated, developed, manufactured, leased, sold and/or distributed the said device/equipment/system and/or its component parts involved in the occurrence made the basis of plaintiff's complaint, and said negligent and wanton conduct was a proximate cause of the plaintiff's injuries and damages herein described. Furthermore, they are liable as the original formulators, developers, manufacturers, sellers or distributors or as the predecessors or successors of the original formulators, developers, manufacturers, sellers or distributors of said device/equipment/system and/or its component parts.

6. The defendants DAVOL and/or BARD and/or fictitious party defendants I, J, K, L, M and N listed and described in the caption hereof as the formulators, developers, manufacturers, distributors, lessors and/or sellers of the said device/equipment/system and/or its component parts involved in the occurrence made the basis of plaintiff's complaint, negligently or wantonly failed to warn the plaintiff of the dangers associated with the use of the aforesaid device/equipment/system and/or its component parts and said negligent or wanton conduct was a proximate cause of the plaintiff's injuries and damages. Furthermore, said defendants knew or should have known of inherent defects, flaws and dangers in the said PATCH device that would cause injury to the body and organs of the patient once surgically implanted, or cause the device to fail or malfunction

once implanted, causing injury to the body and organs of the patient, but they negligently, willfully and/or intentionally concealed and withheld this information from physicians, patients and the public.

7. On or before April 19, 2005, defendants DAVOL and/or BARD and/or fictitious party defendants I, J, K, L, M and N listed and described in the caption hereof, were in the business of leasing, selling or distributing the said device/equipment/system and/or its component parts in the State of Alabama and said defendants were merchants with respect to such goods. At the time of the aforesaid, the defendants knew or had reason to know the particular purpose for which the said device/equipment/system and/or its component parts were to be used, and the defendants knew or had reason to know that plaintiff was relying on the skill and judgment of the defendants and in fact relied on said skill and judgment at the time the said device/equipment/system and/or its component parts was used. Defendants thereby impliedly warranted that the said device/equipment/system and/or its component parts were fit for said purpose. Plaintiff used the said device/equipment/system and/or its component parts for the particular purpose for which selection had been made by the defendants. Plaintiff avers that said defendants breached the aforesaid implied warranty in that said device/equipment/system and/or its component parts were not reasonably fit for the use for which they were selected. As a proximate result of the aforesaid breach of warranty by each of the aforesaid defendants, the plaintiff was caused to suffer the injuries and damages set out herein.

8. On or before April 19, 2005, defendants DAVOL and/or BARD and/or fictitious party defendants I, J, K, L, M and N listed and described in the caption hereof, were in the business of leasing, selling or distributing the said device/equipment/system and/or its component parts in the State of Alabama and said defendants were merchants with respect to such goods. The said defendants expressly warranted that said device/equipment/system and/or its component parts would be safe when used in a foreseeable manner. Defendants breached said warranty in that said device/equipment/system and/or its component parts were not reasonably safe when being used in a foreseeable manner. As a proximate result of the aforesaid breach of warranty by each of the aforesaid defendants, the plaintiff was caused to suffer the injuries and damages set out herein.

9. On or about April 19, 2005 said device/equipment/system and/or it's component parts was/were unsterile, contaminated or otherwise capable of causing, allowing or creating an infection and said defendants knew, or should have known of said unsafe condition(s). They negligently and improperly caused or allowed said condition(s) to exist, negligently and improperly failed to identify said condition(s) and/or negligently failed to timely and properly notify/warn concerning said condition(s) or recall said device/equipment/system. Furthermore, the defendants negligently, willfully and/or intentionally concealed and withheld information from physicians, patients and the public.

10. Said defendants knew or should have known of the unsafe and dangerous infection causing propensities of said device/equipment/system (particularly in patients such as Plaintiff). However, they negligently and improperly failed to provide warnings concerning these matters, negligently failed to timely and properly undertake research and testing to identify and study these matters and negligently and improperly failed to design or alter the device/equipment/system or its' warnings/instructions so as to prevent infection. Furthermore, said defendants withheld and concealed information concerning the infection risks and dangers of said device/equipment/system from the public, the plaintiff and the medical profession.

11. The aforesaid wrongful, negligent or wanton conduct of the named and fictitious party defendants combined and concurred and as a proximate result thereof, the plaintiff, DAVID STATON was caused to suffer and develop massive infection(s), abdominal complications, surgical complications, injuries to the body and body organs and related complications and permanently injured.

12. The conduct of each of the named and fictitious party defendants combined and concurred, and as proximate result of same, Plaintiff was injured and damaged as follows:

a. Plaintiff was permanently injured;
b. Plaintiff was caused, and will in the future be caused, to suffer physical, emotional and mental pain, distress and anguish;
c. Plaintiff was caused and will in the future be caused to incur expenses for medical services; and
d. Plaintiff will be caused to lose future wages and income.
e. Plaintiff's wife suffered loss of consortium and services.

On the basis of the foregoing, Plaintiff requests that the jury selected to hear this case render a verdict for Plaintiff and against each defendant, and that it award damages in an amount which will adequately compensate Plaintiff for the injuries and damages sustained due to the defendant's negligence. Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and that it also award Plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit. Furthermore, the plaintiff requests an award of damages to the Plaintiff in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and One Million Dollars ($1,000,000.00) in punitive damages.

Respectfully Submitted,

FRANK O. HANSON, JR. (HAN007)
Attorney for Plaintiff

OF COUNSEL FOR PLAINTIFF:
4401 Gary Avenue
Fairfield, Alabama 35064
(205) 786-3775

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for the trial of this cause.

FRANK O. HANSON, JR.

**REQUEST FOR SERVICE**

Pursuant to Alabama Rules of Civil Procedure, 4.1 and 4.2, Plaintiff requests that the foregoing summons and Complaint be served by certified mail.

FRANK O. HANSON, JR.